UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

SAHAND YOUSEFI NASRABADI,

    Petitioner,

v().                                              No. 1:25-CV-129-H

MARCELLO VILLEGAS, et al.,

    Respondents.

## ORDER

Before the Court is Sahand Yousefi Nasrabadi's First Amended Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. Dkt. No. 10. Nasrabadi contends that the respondents revoked his order of supervision with "no significant likelihood of removal in the reasonable, foreseeable future." *Id.* at 2. The respondents claim that removal to Iran is now likely because Iranian officials "expressed a willingness to help facilitate removal in this case."[1] Dkt. No. 14 at 6–7. If Iran is uncooperative, however, the respondents say they "will likely explore the possibility of a third-country removal." *Id.* at 7.

Nasrabadi asserts three grounds for relief: (1) that the Fifth Amendment (a) entitles him to meaningful notice and opportunity to present a fear-based claim before the government deports him to a third country and (b) protects him from any redetention pursuant to current Department of Homeland Security (DHS) policy; (2) that DHS violated

---

[1] An Iranian foreign ministry official "said . . . that U.S. immigration authorities planned to deport 400 Iranians to Iran over the coming months." Farnaz Fassihi & Hamed Aleaziz, *U.S. Deports Planeload of Iranians After Deal With Tehran, Officials Say*, N.Y. TIMES (Sept. 30, 2025), https://www.nytimes.com/2025/09/30/world/middleeast/us-iran-deportation-flight.html (last accessed Oct. 28, 2025).

its regulations and his Fifth Amendment rights when it revoked his release; and (3) that the APA gives him relief for the purported regulatory violation. *Id.* at 20–23. Because his first and only claim that survives dismissal is already pending in the District of Massachusetts,[2] the Court denies Nasrabadi's habeas petition.

1.   **Factual and Procedural Background**

   A.   **Factual Background**

Sahand Yousefi Nasrabadi is an Iranian citizen who, in late 2010, entered the United States as a refugee and obtained lawful permanent resident status. Dkt. No. 10 at 19. Approximately 18 months later, Nasrabadi was charged with aggravated sexual assault of a child under 14 years of age. Dkt. Nos. 13 at 1; 14 at 10. He pled guilty to a lesser count and was sentenced to deferred adjudication. Dkt. No. 14 at 12.

The DHS learned of Nasrabadi's conviction and initiated removal proceedings in October 2013. Dkt. No. 10 at 19. He was ordered removed to Iran that month.[3] Dkt. Nos. 10 at 20; 13 at 1. Nasrabadi did not appeal the decision, and thus the order of removal

---

[2] There is currently a certified nationwide non-opt-out class action pending in the District of Massachusetts, *D.V.D. v. DHS*, 1:25-cv-10676, that includes Nasrabadi.

[3] The parties appear to disagree about the facts regarding the removal proceedings. Nasrabadi complains that despite appearing pro se at his hearing, he was not provided a Farsi interpreter, informed of "the protections afforded by deferral of removal under [the Convention Against Torture (CAT)]," or "allow[ed] . . . to contest whether his conviction barred him from applying for withholding." Dkt. No. 10 at 19–20.

The defendants, however, offer a June 2025 Order from an Immigration Judge (IJ) stating that Nasrabadi "was able to clearly express himself in the English language and was given ample opportunity to ask for clarification on anything he did not understand." Dkt. No. 14 at 29. The IJ found that Nasrabadi claimed to understand his rights, "never asked any questions about his rights," and declined "additional time to find an attorney." *Id.* Moreover, he was given "the opportunity to apply [for] relief from removal under the CAT," but he "declined to apply for any relief" and "expressed . . . that he was tired of being in the U.S." *Id.* This, despite "[t]he Court confirm[ing] with him multiple times that his refusal to seek relief would mean he would be removed to Iran." *Id.*

became final.  Dkt. No. 14 at 6.  Approximately six months later, he was released from Immigration and Customs Enforcement (ICE) custody and placed under an Order of Supervision (OSUP) because ICE was unable at that time to remove him to Iran.  *Id.*

In June 2025, Nasrabadi's counsel filed a motion to reconsider the final order of removal.  *Id.*  An IJ denied that motion.  *Id.* at 7.  Later that month, ICE redetained Nasrabadi at the Bluebonnet Detention Center in Anson, Texas, after which he filed the instant habeas petition.  Dkt. No. 5 at 1.  Upon being arrested, the respondents say that Nasrabadi was told "he would be detained because he was subject to a final order of removal," and there was "now a likelihood of removal to Iran."  Dkt. No. 14 at 6.  "[H]e was informed [of] the reason for his revocation and was given the opportunity to respond during [an] informal interview."  *Id.* at 7.

According to the respondents, in July 2025, "[t]he Interest Section of Iran expressed a willingness to help facilitate removal" in Nasrabadi's case.  *Id.*  ICE now plans to effectuate his removal, pending Iran's issuance of the appropriate travel document.  *Id.*  Otherwise, the government "will likely explore the possibility of a third-country removal."  *Id.*

    **B.**    **Regulatory Background**

When the government seeks to remove an alien, they ordinarily commence removal proceedings, which require an evidentiary hearing before an IJ.  8 U.S.C. § 1229a.  Removal proceedings determine both an alien's removability and his ultimate destination.  By default, an alien is entitled to select one country "to which the alien wants to be removed."  8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f).  But if the alien does not select a country, the IJ will

designate the country of removal and, if appropriate, alternative countries. 8 C.F.R. § 1240.10(f).

Federal law also provides aliens with certain protections—some discretionary, others mandatory—such as asylum, withholding of removal, and the CAT. 8 C.F.R. § 1240.11(c)(1). Where an IJ finds that an alien is likely to be persecuted or tortured, that alien is entitled to mandatory protection through withholding of removal or the CAT, respectively. *See Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("These forms of relief require the noncitizen to show a greater likelihood of persecution or torture at home than is necessary for asylum, but the Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility."). But withholding of removal and CAT protection are relevant only to the removable alien's destination; they are not wholesale protections against removal.

Thus, circumstances may arise where the government can still remove an alien to a "country whose government will accept the alien," even though that country was not authorized by an IJ. 8 U.S.C. § 1231(b)(2)(E)(vii). Such removals are called "third-country removals." Federal law prohibits third-country removals if "the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Likewise, the Foreign Affairs Reform and Restructuring Act of 1998, by codifying CAT protections, prevents aliens from being removed to any country where they would face torture. *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18. In view of these protections against third-country removal, the question of what procedures

the Constitution requires has been a topic of ongoing controversy. *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670 (2025); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025).

### C. *D.V.D.* Litigation

In February 2025, ICE issued a directive (the February Directive) instructing its officers to review for removal all cases on the non-detained docket and determine the viability of third-country removal. Dkt. No. 10 at 15. The following month, DHS issued an updated guidance (the March Guidance) on third-country removals. Dkt. No. 14 at 33–34. The March Guidance memorandum dictates that, if the third country has "provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured" and the Department of State deems those assurances credible, an alien "may be removed without the need for further procedures." *Id.* In the event an alien "affirmatively states a fear," USCIS will conduct a screening within 24 hours of the referral and determine whether the alien "would more likely than not be persecuted on a statutorily protected ground or tortured" if removed to the third country. *Id.* at 34. If the United States Citizenship and Immigration Services "determines that the alien has not met this standard, the alien will be removed." *Id.*

In April 2025, the District of Massachusetts certified an injunctive or declaratory (and thus non-opt-out) class under Federal Rule of Civil Procedure 23(b)(2) challenging these new third-country removal procedures. *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 385–86 (D. Mass. 2025). That court also issued a preliminary injunction ordering the government not to remove any class members to a third country without complying with specified procedures. *Id.* at 392–93. The court defined the non-opt-out class as

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA

> (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378.

In June 2025, the Supreme Court, while leaving the certified class intact, stayed the *D.V.D.* preliminary injunction pending the appeal before the United States Court of Appeals for the First Circuit. *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025). The class members' claims remain pending in the District of Massachusetts, and the preliminary-injunction appeal remains pending in the First Circuit. *See* 1:25-cv-10676, Dkt. Nos. 180; 217.

**2.    Legal Standards**

28 U.S.C. § 2241 authorizes a district court to grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 habeas proceedings are also available to challenge post-removal-period detention. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

**3.    Analysis**

    **A.    The Court denies Nasrabadi's challenge to third-country removal because he is part of a non-opt-out class in *D.V.D. v. DHS*.**

Nasrabadi is part of the non-opt-out class certified by the District of Massachusetts. That court enjoined the class members' removal absent specified procedural protections. 778 F. Supp. 3d at 392–93. And although the Supreme Court stayed that order, 145 S. Ct. at 2153, the preliminary injunction and related subsequent orders are currently on appeal to the United States Court of Appeals for the First Circuit, and the class members' claims are pending in the district court.

The respondents argue that dismissal is appropriate because Nasrabadi is bound as a member of the non-opt-out class action in *D.V.D.* Dkt. No. 13 at 4. After failing to mention the *D.V.D.* litigation in his original and amended petitions, *see* Dkt. Nos. 1; 10, Nasrabadi seeks to differentiate his claims from the *D.V.D.* litigation in his reply brief. Dkt. No. 15 at 2–3. But Nasrabadi's central claim concerns his potential removal to a third country without "meaningful notice and opportunity to present a fear-based claim"—i.e., of persecution or torture. Dkt. No. 10 at 21. This claim is identical to the class claims pending before the District of Massachusetts. *Compare* Dkt. No. 10 at 20–21 ("Petitioner has a due process right to meaningful notice and opportunity to present a fear-based claim . . . [and] to not be re-detained pursuant to" current DHS policies), *with* Dkt. No. 15-1 at 35 ("Plaintiffs have a due process right to meaningful notice and opportunity to present a fear-based claim . . . [and] to implementation of a process or procedure to afford these protections.").

The Court thus dismisses Nasrabadi's third-country removal claim. Nasrabadi's attempts to distinguish his claim from the *D.V.D.* litigation by highlighting his requests for injunctive relief falls short. Dkt. No. 15 at 2. Fifth Circuit precedent establishes that an "individual class member should be barred from pursuing his own individual lawsuit that seeks equitable relief within the subject matter of the class action." *Green v. McKaskle*, 770 F.2d 445, 447 (5th Cir. 1985); *see also Gillespie v. Crawford*, 858 F.2d 1101, 1102–03 (5th Cir. 1988) (explaining that individual class members are barred from pursuing separate lawsuits seeking equitable relief within the scope of a class action's subject matter). Further, the principle of comity "requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F2d 721, 728 (5th Cir. 1985). Nasrabadi's third-country

removal claim therefore should not be addressed in this Court. The Court agrees with the respondents that the proper forum for this claim is the District of Massachusetts.[4]

### B. Nasrabadi fails to show that DHS violated its regulations by revoking his Order of Supervision.

Next, Nasrabadi argues that "DHS violated its own regulations by revoking [his] OSUP and re-detaining him without any forewarning." Dkt. No. 10 at 22. He alleges two discrete violations of DHS regulations. First, he argues that his redetention contravenes 8 C.F.R. § 241.4(l) because "[n]one of the conditions listed" in that regulation as bases for revocation "are present in [his] case." *Id.* Second, he argues that the regulation requires a "prompt informal interview," regardless of the reason for revocation. *Id.*

#### i. Regulatory Framework

Section 241.4(l) comprises three subsections, two of which are relevant here. Subsection (1) describes the procedures for revoking release of an alien "who violates the conditions of release." This subsection requires that, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," after which "[t]he alien will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

---

[4] In reaching this conclusion, this Court joins many other district courts throughout the country. *See, e.g., Sanchez v. Bondi*, No. 1:25-cv-02287, 2025 WL 2550646, at *2 (D. Colo. Aug. 20, 2025); *Ghamelian v. Baker*, Civ. Case No. SAG-25-02106, 2025 WL 2049981, at *3 (D. Md. July 22, 2025), *recons. denied*, Civ. Case No. SAG-25-02106, 2025 WL 2074155 (July 23, 2025); *Tanha v. Warden, Balt. Det. Facility*, 1:25-cv-02121, 2025 WL 2062181, at *5 (D. Md. July 22, 2025); *I.V.I. v. Baker*, Civ. No. JKB-25-1572, 2025 WL 1519449, at *2 (D. Md. May 27, 2025) ("Even stripped of any reference to the District of Massachusetts' order, these claims are the same as (or substantially related to) the class claims being litigated in that district.").

Subsection (2) permits discretionary revocation "when, in the opinion of the revoking official," any of four enumerated criteria are satisfied. While one of these criteria is if "[t]he alien violates any condition of release[,]" § 241.4(l)(2)(ii), subsection (2) grants the Executive Associate Director of ICE and, in limited circumstances, a district director of ICE, broad discretionary revocation authority, even in the absence of such a violation. Specifically:

> Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
> (i)    The purposes of release have been served;
> (ii)   The alien violates any condition of release;
> (iii)  It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv)   The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2).

### ii.   The government's revocation of Nasrabadi's release complied with 8 C.F.R. § 241.4(l)(1)–(2).

The Court rejects Nasrabadi's argument that the respondents revoked his release in the absence of the required bases for revocation and without an informal interview. First, Nasrabadi asserts that none of the factors justifying revocation under section 241.4(l)(2) are present here. But the government submitted a sworn affidavit from deportation officer Ryan J. Lankford, stating that "[a]t the time of his arrest, [Nasrabadi] was informed that he would be detained because he was subject to a final order of removal and there is now a likelihood of removal to Iran." Dkt. No. 14 at 6. This is consistent with a revocation "to enforce a removal order" against Nasrabadi. 8. C.F.R. § 241.4(l)(2)(iii). Further, in accordance with DHS regulations, Nasrabadi "was informed [of] the reason for his revocation and was given the opportunity to respond during [an] informal interview." Dkt. No. 14 at 6–7.

Nasrabadi understandably pointed out in his reply that "it is difficult to believe that relations between [the U.S. and Iran] have softened since the U.S. bombed Iran in June 2025." Dkt. No. 15 at 7. Difficult, but not impossible: in late September, the United States began chartering deportation flights to Tehran, Iran.[5] In view of this change in circumstances, the Court cannot agree that the respondents revoked Nasrabadi's OSUP in the absence of the enumerated factors for discretionary revocation.

Moreover, section 241.4(l)(2) gives the government considerable discretion in revoking an OSUP. When discretionary revocation is predicated on subsections (i), (iii), or (iv), the regulation does not require the government to demonstrate what factors underlie its discretionary revocation decision, nor does it require the government to disclose its efforts to secure removal. *See* 8 C.F.R. § 241.4(l)(2)(i), (iii)–(iv). In their response, the respondents emphasize this discretion, acknowledging that Nasrabadi's "revocation of release was pursuant to § 241.4(l)(2)," which they claim "do[es] not require notice." Dkt. No. 13 at 10. Regardless, the respondents nevertheless submit evidence that they did, in fact, provide Nasrabadi with notice, an informal interview, and an opportunity to respond. Dkt. No. 14 at 6–7. Because Nasrabadi merely reasserts his conclusory claim otherwise in his reply, Dkt. No. 15 at 7, the Court does not find that he is entitled to relief on this claim.

In his reply brief, Nasrabadi attempts to raise, for the first time, a new argument that the respondents violated 8 C.F.R. § 241.13 when they revoked his OSUP. *Id.* at 3. But arguments raised for the first time in a reply are not properly before the Court. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004). In any case, the basis for this argument is identical to the argument concerning section 241.4, and thus it would be rejected for the

---

[5] *Supra* note 1.

same reasons as stated above. Because the respondents submit evidence demonstrating that Nasrabadi was given notice, an informal interview, and an opportunity to respond, this argument would fail for the same reasons.

### C. Nasrabadi's APA claim fails for the same reasons as given above.

Finally, Nasrabadi asserts a claim under section 706(2) of the Administrative Procedure Act. This section tells the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be" unlawful. 5 U.S.C. § 706(2). Nasrabadi's APA claim relies on identical allegations to his regulatory claim, and thus, for the reasons stated in section 3.B, supra, Nasrabadi's APA claim fails.

### 4. Conclusion

The Court thus denies Nasrabadi's first amended petition for habeas corpus, Dkt. No. 10, because his only claim that survives dismissal is already pending in the District of Massachusetts.

So ordered on October 28, 2025.

                                                         JAMES WESLEY HENDRIX
                                                         UNITED STATES DISTRICT JUDGE